ORIGINAL

Of Counsel:
**LAWYERS FOR EQUAL JUSTICE**
VICTOR GERMINIANI          4354
P.O. Box 37952
Honolulu, HI  96837
Telephone:  (808) 779-1744
Email:  victor@lejhawaii.org

Of Counsel:
**ALSTON HUNT FLOYD & ING**
Attorneys at Law
A Law Corporation
PAUL ALSTON                1126
J. BLAINE ROGERS           8606
1001 Bishop Street
Suite 1800
Honolulu, Hawai`i  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail:  palston@ahfi.com
         brogers@ahfi.com

Attorneys for Plaintiff

**NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE**
MARC COHAN
MARY R. MANNIX
PETRA T. TASHEFF
275 Seventh Ave., Suite 1506
New York, NY  10001
Telephone:  (212) 633-6967
Facsimile:   (212) 633-6371
Emails:     cohan@nclej.org
            mannix@nclej.org
            taxheff@nclej.org

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 17 2010

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DAVID L. BOHN, on behalf of himself, and all others similarly situated,<br><br>              Plaintiffs,<br><br>       vs.<br><br>LILLIAN B. KOLLER, in her | CIVIL NO.  CV10  00680 DAE LEK<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; SUMMONS** |

official capacity as Director of
the Department of Human
Services, State of Hawai`i,

      Defendant.

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

1.    This action arises from Defendant's intentional, ongoing and persistent failure to timely process applications for Hawai`i's poorest families who seek Supplemental Nutrition Assistance Program ("SNAP") benefits, as required by the Federal SNAP statute and implementing regulations.  Defendant's failure to process applications in a timely manner means that thousands of households are denied desperately needed assistance to help them feed their families and suffer hunger as a result.

2.    Plaintiff brings this action on behalf of himself and a class of needy families and individuals challenging Defendant's policies and practice of failing to timely process SNAP applications and issue benefits in violation of federal law.

3.     Plaintiff seeks preliminary and permanent injunctions enjoining Defendant from failing to process applications for SNAP benefits and provide benefits to eligible households within the time frame mandated by federal law.

## JURISDICTION AND VENUE

4.     This action is brought under 42 U.S.C. § 1983 to redress the deprivation of federal statutory rights.

5.     Jurisdiction over this action is conferred upon this court by  28 U.S.C. § 1331, which provides for jurisdiction in the United States district courts over civil actions arising under the Constitution, laws, or treaties of the United States.

6.     Venue properly lies with this district pursuant to 28 U.S.C. § 1391(b).

## CLASS ALLEGATIONS

7.     Plaintiff brings this action under Federal Rule of Civil Procedure Rule 23(b)(2) on behalf of a class defined as follows:

> All Hawai`i residents who (1) applied for Supplemental Nutrition Assistance Program ("SNAP") benefits in Hawai`i after November 2008 and who did not receive benefits in a timely manner, or (2) are seeking, or will in the future seek, SNAP benefits in Hawai`i.

8.     The class is so numerous that joinder of all members is impracticable.  Upon information and belief, thousands of people in Hawai`i apply for SNAP benefits every month and, since November 2008 (and before) many were not timely given benefits to which they were entitled.  In addition, because Defendant's failure to cause all applications to be processed in a timely manner is continuing, the class includes individuals whose identity is not available and, as to future class members, is not readily available, making joinder of all members a practical impossibility.

9.     There are numerous questions of fact and law common to the class concerning whether defendant fails to timely process SNAP applications within the time frame required by law.

10.    The individual Plaintiff's claims are typical of the claims of the class in that the named Plaintiff has applied for SNAP benefits and has experienced unlawful delays in processing.

11.    Declaratory and injunctive relief is appropriate with respect to the class and as a whole because Defendant has acted on grounds applicable to the class.

12.    The named Plaintiff and the proposed class are represented by Lawyers for Equal Justice ("LEJ"), Alston Hunt Floyd

& Ing ("AHFI"), and the National Center for Law and Economic Justice ("NCLEJ"), all of whose attorneys are experienced in class action litigation and will adequately represent the class. LEJ and AHFI have litigated numerous class action cases in this District. The NCLEJ has litigated numerous public benefits class action cases in federal district courts.

13.    A class action is superior to other available methods for a fair and efficient adjudication of this matter in that the prosecution of separate actions by individual class members would unduly burden the Court and create the possibility of conflicting decisions. Further, declaratory and/or injunctive relief is appropriate for the class as a whole.

**PARTIES**

14.    Plaintiff DAVID L. BOHN resides on Oahu in Wahiawa, Hawai`i.

15.    Defendant LILLIAN B. KOLLER is the Director of the Department of Human Services ("DHS") for the State of Hawai`i and is responsible for, *inter alia,* the overall operation and administration of SNAP in Hawai`i as described in this Complaint,

and complying with federal law relating to SNAP.  Defendant is sued in her official capacity.

## STATUTORY AND REGULATORY SCHEME

16.    The following sets forth the federal statutes and regulations which, as to applications for SNAP require Defendant to, *inter alia*, accept applications and process those applications and issue benefits to eligible households in a timely manner.

17.    Congress established the federally-funded, state-administered Food Stamp Program in 1964 in order to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households."  7 U.S.C. § 2011; 7 C.F.R. § 271.1.  Effective October 1, 2008, the Federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program and the Federal Food Stamp Act was renamed the Food and Nutrition Act of 2008.  Pub. L. No. 110-246, §§ 4001 & 4002.

18.    SNAP provides fully federally-funded benefits to eligible low-income households to help them purchase food.  7 U.S.C. § 2011 *et seq.*

19.     States participating in SNAP share in the cost of administration and designate a single state agency responsible for administering the program and complying with federal requirements.  7 U.S.C. § 2020 (a), (d) and (e).

20.     Hawai`i participates in SNAP.  DHS is the state agency responsible for administering SNAP in Hawai`i.  Haw. Rev. Stat. § 346-51.

21.     To be eligible for SNAP benefits, a household's monthly net income must be below the federal poverty line,[1] and its available resources may not exceed $2,000 (or, where a household includes a member 60 years of age or older, $3,000).  7 U.S.C. §§ 2014(c), (g).

22.     Under the Food and Nutrition Act of 2008, households must be permitted to file an application on the first day that they contact the local social services office.  7 U.S.C. § 2020 (e)(2)(B)(iii); 7 C.F.R. §§ 273.2(c)(1), (c)(2)(i).

---

[1] The 2009-2010 federal poverty line is $21,060 (annual) for a family of three living in Hawai`i.  74 Fed. Reg. 4199-4201.

23.     The State agency is required to "encourage" households to file applications the same day they contact the office. 7 C.F.R. § 273.2(c)(2)(i).

24.     The application filed by an individual or household seeking to apply for SNAP benefits need only include the applicant's name, address, and signature.  7 C.F.R. § 273.2(c)(1).

25.     Information regarding SNAP's requirements and procedures must be made generally available and the administering agency must explain to applicants for SNAP benefits their rights and responsibilities concerning eligibility for benefits.  7 C.F.R. §§ 273.2(c)(4), (e)(1), 272.5(b)(3).

26.     If an individual or household seeks to apply jointly for cash assistance and SNAP benefits, any delays in the processing of the application for cash assistance may not result in any delay in the processing of the SNAP application.  7 U.S.C. §§ 2014(b), 2020(e)(3), (i)(2); 7 C.F.R. §§ 273.2(g)(1), (j)(1)(iii).

27.     If the cash assistance application is denied or withdrawn, the applicant can not be required to submit a new SNAP application.  7 U.S.C. §§ 2014(b), 2020(e)(3), (i)(2); 7 C.F.R. § 273.2(j)(1)(v).

28.    The State agency must provide ongoing SNAP benefits to eligible applicants no later than 30 days after date of application.  7 U.S.C. § 2020(e)(3); 7 C.F.R. §§ 273.2(a), (g)(1).

29.    Expedited issuance of SNAP benefits is generally available to households with very low income and liquid resources, households whose housing costs exceed the sum of their income and liquid resources, and certain migrant and seasonal worker households.  7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(1).

30.    The State agency must affirmatively identify households eligible for expedited service at the time the household requests assistance.  For example, a receptionist, volunteer, or other employee shall be responsible for screening applications as they are filed or as individuals come in to apply.  7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(2).

31.    Under federal law, SNAP benefits must be provided to households entitled to expedited processing not later than the seventh day following the date an application is filed.  7 U.S.C. § 2020(e)(9)(A); 7 C.F.R. § 273.2(i)(3)(i).

## FACTUAL ALLEGATIONS

### A.    Facts Common to the Class

32.    DHS maintains data on its performance in processing SNAP applications in its monthly SNAP application timeliness data reports.  This data shows persistent and serious delays in processing SNAP applications.  Defendant's data shows that untimely processing of all SNAP applications grew from 16.27% of total dispositions in October 2009 to 22.8% in May 2010.  The increase in untimely dispositions is particularly pronounced on the Island of Oahu.  From October 2009 to May 2010, untimely processing of all SNAP applications increased from 10.42% to 23.4% on Oahu, 47.28% to 46.2% on Maui, and 20.39% to 18.4% in Kona.

33.    Defendant's data shows the following:

**All SNAP Application Dispositions**

| Month | Total # Dispositions | # Late | % Late |
|---|---|---|---|
| October 2009 | 5,045 | 821 | 16.27 |
| November 2009 | 4,917 | 977 | 19.86 |
| December 2009 | 5,181 | 1009 | 19.48 |
| January 2010 | 4,4448 | 879 | 19.48 |
| February 2010 | 4,519 | 926 | 20.49 |
| March 2010 | 5,158 | 1,137 | 22.04 |
| April 2010 | 4,866 | 1,023 | 21.02 |

| May 2010 | 4,905 | 1,116 | 22.75 |
|---|---|---|---|

34.    Defendant's untimely dispositions of expedited SNAP applications are an increasingly severe violation of federal law.  For example, Defendant's untimely processing of expedited SNAP applications doubled from 16% in July 2009 to 32% in February 2010, and offices on nearly all islands experienced decrease in timeliness.  Oahu offices' untimely dispositions increased from 12.6% to 25.3%, while Maui offices' untimely dispositions increased from 64.1% to 67.6%.  On the Big Island (Hawai`i), Kona offices' untimely dispositions increased from 36.4% to 57.1%, while Molokai and Lanai's untimely rate has increased from 17.7% to 20%.

35.    Defendant's data also shows the following:

**Expedited SNAP Application Dispositions**

| Month | Total # Dispositions | # Late | % Late |
|---|---|---|---|
| July 2009 | 1699 | 277 | 16.30 |
| August 2009 | 1630 | 297 | 18.22 |
| September 2009 | 1737 | 355 | 20.43 |
| October 2009 | 1553 | 344 | 22.15 |
| November 2009 | 1515 | 444 | 29.30 |

| | | | |
|---|---|---|---|
| December 2009 | 1542 | 412 | 26.72 |
| January 2010 | 1390 | 349 | 25.11 |
| February 2010 | 1346 | 434 | 32.24 |
| March 2010 | 1587 | 528 | 33.3 |
| April 2010 | 1503 | 487 | 32.4 |
| May 2010 | 1462 | 460 | 31.5 |

36.    Defendant appears to have some internal calculation method for allocating fault in delay between defendant and the client.  Plaintiffs have no reason to believe this method of allocating fault complies with stringent federal requirements for attributing the cause of delay. Even if the method complies with federal standards, however, in May 2010 Defendant assigned herself fault for delay in 13.4% of all SNAP dispositions.

**B.    Facts of Individual Named Plaintiffs**

37.    Plaintiff is 68 years old and is a disabled veteran living by himself in a senior housing project in Wahiawa.

38.    Plaintiff receives $637 monthly from the Veterans Administration ("VA") as compensation for injuries sustained while serving in the military in Vietnam.  He has a current disability rating from the VA of 50%.  Plaintiff also receives $585 each month from the Social Security Administration ("SSA") in retirement

benefits.  Plaintiff struggles on his fixed monthly income of
$1222.00.

39.    Plaintiff has little left to purchase food after paying
rent, bills, utilities and medical insurance.  After struggling to
provide for his nutritional needs, Plaintiff visited The Hawai`i Food
Bank and was issued $50 worth of vouchers to purchase food at
participating farmers' markets as part of the Senior Farmers'
Market Nutrition Program.  Plaintiff has exhausted these vouchers
and is not eligible to receive others to support his nutritional needs,
as the program ended on October 31, 2010.

40.    On September 29, 2010 Plaintiff applied for SNAP
benefits by downloading an application from the internet and
mailing in the completed application to DHS.  From the date of his
application, Plaintiff waited almost two weeks before receiving any
correspondence from DHS.

41.    On or about October 14, 2010 Plaintiff received a
letter from DHS scheduling an appointment at 11:00 a.m. on
October 25, 2010 in the DHS office located in Kapolei.  The letter
informed Plaintiff that if he was over 60 years old or disabled, DHS
would conduct a telephone interview.  The letter Plaintiff received

from DHS identified Mr. K. Mina as the caseworker who was scheduled to conduct Plaintiff's office interview.  The letter also included Mr. Mina's telephone number.

42.     Plaintiff would face difficulties traveling to an office appointment in Kapolei from his residence in Wahiawa.  Plaintiff has no other form of transportation except public transportation.  A trip by bus to the DHS office in Kapolei would take approximately 3 hours each way from Wahiawa.

43.     Plaintiff believed DHS had all of the information needed to process his application in their system.  Plaintiff had previously received food stamps in May and June of 2010.

44.     On or about October 16, 2010, shortly after receiving the letter from DHS, Plaintiff wrote to Mr. Mina and requested a telephone interview because of the difficulty in getting to the DHS office in Kapolei.  As indicated in the letter from DHS, Plaintiff's age and disability qualified him for such accommodation.

45.     Plaintiff did not receive a response to his letter and called the DHS office every day from on or about October 17, 2010 until October 29, 2010.  Each time he called, Plaintiff was unable to reach the caseworker Mr. Mina, and left a message on Mr. Mina's

voice mail system.  Each of these messages requested that a telephone interview be conducted instead of an interview in the Kapolei DHS office.

46.    During this period, Mr. Mina left two messages on Plaintiff's recording machine.  Both messages were left on the day before a holiday and a furlough day when the DHS offices were scheduled to be closed.

47.    On or about October 29, 2010, Plaintiff mailed a letter to the supervisor of the Kapolei DHS office again requesting a telephone interview and describing his repeated attempts to contact Mr. Mina.

48.    On November 3, 2010, Plaintiff received a phone message on his answering machine that a DHS supervisor had called and requested that he contact the DHS office.  Plaintiff contacted the DHS office using the number provided by DHS that same day, and again on November 4 and 5, 2010.  Plaintiff was unable to reach a live person at the number he was directed to call, instead reaching a recording that would not let him leave a message.

49.    On November 5, 2010, Plaintiff received a letter from DHS mailed on November 3, 2010.  The letter informed Plaintiff that he would have to contact his DHS worker by October 29, 2010 (five days before the letter was mailed) to schedule another appointment for an interview or his application would be denied. The letter further informed Plaintiff that he would have to file a new application for food stamps if the deadline for contacting his worker had already passed.

50.    On November 12, 2010, Plaintiff was finally interviewed over the telephone for his food stamps, and he was asked to provide additional documents to the caseworker.  Plaintiff was also told to pick up an Electronic Benefits Transfer card at the Wahiawa office, but was given no assurance as to when his case would be processed or when he would receive food stamps.

51.    Plaintiff applied for SNAP benefits to help provide for his nutritional needs.  The additional assistance per month to spend on food would have made a marked different in Plaintiff's ability to meet these needs.  He waited for an update on the status of his application for more than 45 days.

## STATEMENT OF CLAIM

52.    Defendant's policies and practices of failing to process SNAP applications and provide benefits to eligible households within thirty days of the date of application violate 7 U.S.C. § 2020(e)(3), and implementing regulations 7 C.F.R. §§ 273.2(a)(2) and (g)(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court

A.    Assume jurisdiction of this case;

B.    Certify this action as a class action under Fed. R. Civ. P. 23(b)(2);

C.    Declare that Defendant's policies and practices of failing to process SNAP applications and provide benefits to eligible households within thirty days of the date of application violate 7 U.S.C. § 2020(e)(3); 7 C.F.R. §§ 273.2(a)(2), (g)(1);

D.    Preliminarily and permanently enjoin Defendant to (a) process and provide SNAP benefits to eligible households within the time frame required by federal statute and implementing regulations; (b) develop and submit to the court a corrective action

plan that will ensure all SNAP applications are processed and SNAP benefits are provided to all eligible individuals within the time frame required by federal law; and (c)  monitor Defendant's compliance with federal law regarding timely processing of applications and issuance of benefits and to provide reports of such monitoring to plaintiffs' counsel;

E.   Award litigation costs and reasonable attorneys' fees, as provided for by 42 U.S.C. § 1988; and

F.   Grant such other and further relief as the Court may deem just and proper.

DATED: Honolulu, Hawai`i, November 17, 2010.


_____
VICTOR GEMINIANI
MARC COHAN
MARY R. MANNIX
PETRA T. TASHEFF
PAUL ALSTON
J. BLAINE ROGERS

Attorneys for Plaintiff

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Hawaii

| | |
|---|---|
| DAVID L. BOHN, on behalf of himself, and all others similarly situated, <br> *Plaintiff* <br> v. <br> LILLIAN B. KOLLER, in her official capacity as Secretary of the Department of Human Services <br> *Defendant* | ) ) ) ) ) ) ) ) <br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   LILLIAN B. KOLLER, in her official capacity as Secretary of the Department of
Human Services

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:     ALSTON HUNT FLOYD & ING
Suite 1800, 1001 Bishop Street
Honolulu, HI  96813

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

SUE BEITIA

*CLERK OF COURT*

Date: NOV 17 2010

_____
*Signature of Clerk or Deputy*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: