IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LEHUA BOOTH, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PATRICIA McMANAMAN, in her official capacity as Director of the Department of Human Services, State of Hawaii,<br><br>Defendant. | ) | CV. NO. 10-00680 DAE-RLP |

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

On November 16, 2011, the Court heard Plaintiffs' Motion for Preliminary Injunction. Appearing on behalf of Plaintiffs were J. Blaine Rogers, Esq., Victor Geminiani, Esq., Deja Ostrowski, Esq., and, by telephone, Mary R. Mannix, Esq. Appearing on behalf of Defendant was Deputy Attorney General Rebecca E. Quinn. After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction. (Doc. # 30.)

BACKGROUND

I. Supplemental Nutrition Assistance Program

The federal Food Stamp Program, now known as the Supplemental Nutrition Assistance Program ("SNAP"), was initiated in 1964 pursuant to the Food Stamp Act ("the Act").[1] 7 U.S.C. § 2011 et seq. The express purpose of SNAP is to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." Id. § 2011. SNAP provides federally-funded benefits to eligible low-income households to help them purchase food. Id. § 2011 et seq. The program is administered nationally by the United States Department of Agriculture ("USDA"), which is responsible for issuing regulations consistent with the Act. Id. § 2013(a), (c). States that participate in the program designate a state agency to administer the program at the state level. Id. § 2012(t). State agencies must administer the program in compliance with the Act and its implementing regulations. Id. § 2020(e).

Hawaii, of course, has chosen to participate in the program. The Department of Human Services ("DHS") is the designated state agency responsible for administering the program. Haw. Rev. Stat. § 346-51. Pursuant to federal law,

[1]On June 18, 2008, Congress amended the Food Stamp Act by renaming it the Food and Nutrition Act of 2008. Pub. L. No. 110-246, § 4001.

DHS is required to process food stamp applications within thirty days after application and provide ongoing SNAP benefits to eligible applicants no later than thirty days after application. 7 U.S.C. § 2020(e)(3); 7 C.F.R. 273.2(a), (g)(1), (3). Additionally, expedited SNAP benefits must be provided to eligible households no later than seven days following the date of application. 7 U.S.C. § 2020(e)(9); 7 C.F.R. 273.2(i)(3)(i).

On November 10, 2010, USDA sent DHS a letter indicating that individual states are required to have a 90 to 95 percent application timeliness rate and that data showed that DHS had an "application timeliness rate of 78.7 percent with the upper bound of the 95 percent confidence interval at 84.87 percent." (Doc. # 38-2.) The letter directed DHS to submit a written Timeliness Corrective Action Plan outlining the steps that DHS would take to improve overall timeliness. (Id.)

On March 7, 2011, DHS submitted its Timeliness Corrective Action Plan and detailed DHS' efforts to implement a new system of processing cases called the Business Process Re-Engineering ("BPR") model. (Doc. # 38-3.) Statistics indicate that States that have implemented the BPR method have reported improved timeliness rates. (Doc. # 38-1 ¶ 12; Doc. # 38-5.) In March 2011, DHS obtained federal funds to hire a consultant to help DHS establish BPR. (Doc.

# 38-1 ¶ 18.) DHS is currently still in the process of implementing BPR in its SNAP offices. (Id. ¶¶ 18–27.) DHS hopes to have the BPR system in place in all its offices by October 2012. (Id. ¶¶ 24.) There will be an adjustment period associated with BPR but DHS expects to see noticeable changes in the State wide timeliness rate by April 2012. (Id. ¶¶ 25, 28.)

II.     The Instant Action

On November 17, 2010, this action was initiated on behalf of a purported class of Hawaiian residents who (1) applied for SNAP benefits in Hawaii after November 2008 and did not receive benefits in a timely manner, or (2) are seeking, or will in the future seek, SNAP benefits in Hawaii. (Doc. # 1.) The gravamen of Plaintiffs' complaint is that DHS is not determining food stamp eligibility and issuing food stamps within the time limits set forth under federal law. (Id.)

Named Plaintiff Lehua Booth is 53 years old and lives in Kihei, Maui with her husband. (Doc. # 30-2 ¶ 2.) She is disabled and her husband is unemployed. (Id. ¶ 3.) Their only income is the $677 she receives monthly for her Social Security Income. (Id. ¶ 3.) Booth and her husband previously qualified for SNAP benefits and used those benefits to buy food. (Id. ¶ 5.) On August 4, 2011, Booth discovered that her SNAP benefits had been cut. (Id. ¶ 6.) The next day she

went to the Maui DHS office and filled out a SNAP application. (Id. ¶ 6-8.) After almost one month had passed without any response regarding her application, Booth went to the Maui DHS office and was informed that her file was among the backlogged files from the Maui office that had been transferred to the Oahu office. (Id. ¶ 10.) Booth has tried to contact DHS multiple times to inquire as to the status of her application to no avail. (Id. ¶¶ 9, 11, 12, 15.) As of the time of filing the instant Motion, Booth had not yet been informed about whether she qualifies for SNAP benefits.[2] (Doc. # 30 at 3.)

Booth, on behalf of herself and all others similarly situated, brings this action to enjoin Defendant from failing to process applications for SNAP benefits and provide benefits to eligible households within the time frame mandated by federal law. (Doc. # 36 ¶ 3.)

III. Procedural History

On February 7, 2011, the Court issued a Stipulated Order Granting Plaintiff's Motion for Class Certification ("Stipulated Order"). (Doc. # 14.) In the

[2]Defendant states in her Opposition brief that Booth has since received her benefits but there is no evidence in the record to substantiate this fact. In any event, since a class has been properly certified in this case, the claims of the class members would not be mooted or destroyed if subsequent events undermine or moot the individual claims of the named plaintiff. See Bates v. United Parcel Service, 511 F.3d 974, 987 (9th Cir. 2007).

Stipulated Order, the Court ordered: (1) certification of the requested class; (2) appointment of former Named Plaintiff David Bohn as class representative; and (3) appointment of Lawyers for Equal Justice, National Center for Law and Economic Justice, and the law firm of Alston Hunt Floyd & Ing as class counsel.  (Id. at 3–4.)

After the Court issued the Stipulated Order, David Bohn's SNAP application was finally processed.  Plaintiff Lehua Booth subsequently filed a Motion (1) to Intervene; (2) for Appointment as Class Representative; and for Leave to file an Amended Complaint.  (Doc. # 29.)  On October 28, 2011, this Court issued an Order Adopting the Magistrate Judge's Findings and Recommendation to grant that Motion.  (Doc. # 40.)

Plaintiffs filed the instant Motion for Preliminary Injunction on September 12, 2011.  ("Mot.," Doc. # 30.)  In its Motion, Plaintiffs request that this Court order Defendant to (1) process all applications for food stamps within the time frames required by federal law; and (2) provide food stamps and expedited food stamps to eligible individuals on a timely basis.  (Id.)  On October 25, 2011, Defendant filed an Opposition to the instant Motion.  ("Opp'n.," Doc. # 38.)  On November 2, 2011, Plaintiffs filed a Reply in support of their Motion.  ("Reply," Doc. # 43.)

STANDARD OF REVIEW

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008). To obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 365 (citing Munaf v. Geren, 128 S. Ct. 2207, 2218–19 (2008); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311–12 (1982)); see also Stormans, Inc. v. Selecky, 586 F.3d. 1109, 1126–27 (9th Cir. 2009) (applying heightened standard mandated by Winter). "'[S]erious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can [also] support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010). A district court has great discretion in determining whether to grant or to deny a preliminary injunction. See Wildwest Inst. v. Bull, 472 F.3d 587, 589–90 (9th Cir. 2006); see also Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983) ("At one end of the continuum, the

moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor.") (internal citations omitted). However, a mandatory preliminary injunction "is subject to heightened scrutiny and should not be issued unless the facts and the law clearly favor the moving party." Dahl v. Hem Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993).

Plaintiffs seeking preliminary injunctive relief must "demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 129 S. Ct. at 375 (emphasis in original). The mere possibility of irreparable harm is insufficient. Id. (finding the Ninth Circuit's standard of a "possibility" of harm too lenient). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009).

If irreparable injury is shown, courts must then "'balance the competing claims of injury and must consider the effect on each party of the

granting or withholding of the requested relief.'" Winter, 129 S. Ct. at 376 (quoting Amoco Prod. Co., 480 U.S. at 542). In assessing whether the plaintiff has met this burden, the district court has a "'duty . . . to balance the interests of all parties and weigh the damage to each.'" Stormans, 586 F.3d. at 1138 (quoting L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1203 (9th Cir. 1980)).

Finally, the court must weigh the public interest, if any, implicated by the injunction. Winter, 129 S. Ct. at 374. When the reach of an injunction is narrow, limited only to the parties, and has no impact on nonparties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s][granting or] denying the preliminary injunction." Bernhardt v. Los Angeles County, 339 F.3d 920, 931 (9th Cir. 2003). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans, 586 F.3d. at 1139 (citing Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 965 (9th Cir. 2002)). "[When] an injunction is asked [for] which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the

plaintiff." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312–13 (1982). In fact, "courts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 129 S. Ct. at 376–77.

DISCUSSION

I. Likelihood of Success on the Merits

As set forth above, federal law makes clear that state agencies responsible for administering SNAP must do so in compliance with the Act and its implementing regulations. 7 U.S.C. § 2020(e). The Act and its implementing regulations expressly require states to process SNAP applications and provide SNAP benefits to those eligible within thirty days of the filing of an application, and to provide expedited SNAP benefits to those eligible no later than seven days following the date of application. 7 U.S.C. § 2020(e)(3), (e)(9); 7 C.F.R. 273.2(a), (g)(1), (g)(3), (i)(3)(I). In Withrow v. Concannon, the Ninth Circuit held that federal Food Stamp regulations "require compliance, not 'substantial compliance.'" 942 F.2d 1385, 1388 (9th Cir. 1991). The court further explained as follows:

> That a state, having previously been guilty of repeated instances of noncompliance, is in or has brought itself into "substantial compliance" is not a sufficient reason for denying declaratory or injunctive relief. There is, however, doubtless a point at which any failure of total compliance is truly de minimis, where the state has

> come to comply "as strictly as is humanly possible," and it is within the discretion of the district court to deny injunctive relief.

Id. (quoting Haskins v. Stanton, 794 F.2d 1273, 1277 (7th Cir. 1986).[3]

Here, Plaintiffs allege that DHS routinely fails to comply with SNAP's timeliness requirements and that DHS' performance is worsening. (Mot. at 8.) To support this contention, Plaintiffs submit state data indicating that DHS' application timeliness rate has declined dramatically in the past couple years, falling from 83.7 percent in October 2009 to 69 percent in January 2011. (Doc. # 31-3 at 9–10.) Defendant expressly admits that DHS has failed to comply with SNAP's timeliness requirements. (Opp'n at 3.) However, Defendant asserts that injunctive relief is too drastic a step to take in light of DHS' ongoing efforts to improve its timeliness rate through the implementation of the BPR method. (Id. at 12–13.) According to Defendant, since DHS will likely experience the same success with BPR that other states have experienced, Plaintiffs are unlikely to succeed on the merits. (Opp'n at 12.) This Court disagrees.

While DHS has undertaken extensive and commendable ameliorative measures to improve the administration of SNAP, those efforts do not render this

---

[3]While Withrow involved state agencies' obligation to provide aggrieved applicants a fair hearing and prompt determination thereafter, the requirement of full compliance is equally applicable to agencies' obligation to timely process Food Stamp applications pursuant to the Act and its regulations.

action moot, nor do they deprive the Court of its authority to grant injunctive relief or determine the other questions before it. See Barnes v. Healy, 980 F.2d 572, 580 (9th Cir. 1992) ("the court's power to grant injunctive relief survives discontinuance of the illegal conduct"); Log Cabin Republicans v. U.S., 658 F.3d 1162, 1167 (9th Cir. 2011) ("voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice") (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982); American Cargo Transport, Inc. v. U.S., 625 F.3d 1176, 1179 (9th Cir. 2010) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.") (quoting Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)). Moreover, DHS is only in the beginning stages of implementing BPR and thus its effectiveness on DHS' administration of SNAP benefits has yet to be determined. This Court cannot simply defer to the wait-and-see approach advocated by the Defendant, particularly in light of the seriousness of the harm incurred by Plaintiffs as a result of DHS' delay.

Given DHS' undisputed ongoing failure to process SNAP applications within the time frames set forth under federal law, the Court concludes that

Plaintiffs have a strong likelihood of success on the merits of this action.  Indeed, numerous other courts have ordered state and county defendants to comply with the timely processing requirements for food stamp applications.  See, e.g., M.K.B. v. Eggleston, 445 F. Supp. 2d 400, 442 (S.D.N.Y. 2006) (issuing preliminary injunction requiring improvements in computer programs, provision of more and better training, and review and correction of instructional material to ensure compliance with Food Stamp Act requirements for prompt determination of eligibility and provision of benefits); Robidoux v. Kitchell, 876 F. Supp. 575 (D. Vt. 1995) (holding that Vermont Department of Social Welfare was required to process all applications within the prescribed time periods in order to comply with federal timeliness requirements of food stamp program); Robertson v. Jackson, 766 F. Supp. 470, 476 (E.D. Va. 1991), aff'd, 972 F.2d 529 (4th Cir. 1992) (issuing an injunction enjoining the Commissioner of the Virginia Department of Social Services from failing to bring the Virginia Food Stamp Program into compliance with the Food Stamp Act's timely processing requirements); Haskins v. Stanton, 621 F. Supp. 622, 630 (D. Ind. 1985), aff'd, 794 F.2d 1273 (7th Cir. 1986) (issuing preliminary injunction requiring officers of state and county agencies administering food stamp programs to ensure that timeliness standards were met).

II.   Irreparable Harm

Plaintiffs assert that Booth and other members of the Plaintiff class will suffer irreparable and imminent injury in the absence of preliminary relief. (Mot. at 9.)  Specifically, Plaintiffs point out that DHS' delay in processing SNAP applications and providing benefits causes eligible low-income households to go without the assistance that they need to provide food for themselves and their families.

Given the economic circumstances of the Plaintiffs in this case, the denial of public benefits to such individuals unquestionably constitutes irreparable harm.  See, e.g., Beno v. Shalala, 30 F.3d 1057, 1064 n.10 (9th Cir. 1994) (holding that reductions in Aid to Families with Dependent Children benefits, even reductions of a relatively small magnitude, impose irreparable harm on recipient families); Kildare v. Saenz, 325 F.3d 1078, 1083 (9th Cir. 2003) (holding that economic hardship resulting from the denial of disability benefits constitutes irreparable harm because "back payments cannot erase either the experience or the entire effect of several months without food, shelter or other necessities."); Paxton v. Secretary of Health and Human Servs., 856 F.2d 1352, 1354 (9th Cir. 1988) ("When a family is living at subsistence level, the subtraction of any benefit can make a significant difference to its budget and to its ability to survive."); Haskins,

794 F.2d at 1276–77 (holding that "the deprivation of food [resulting from the denial of food stamps] is extremely serious and is quite likely to impose lingering, if not irreversible, hardships upon recipients"). As Booth explains in her declaration, the interruption in food stamp benefits has caused her and her husband severe hardship and made it difficult to obtain food to survive. Since the denial of a preliminary injunction may deprive many low-income households of their sole source of food, the Court concludes that the irreparable harm requirement is easily satisfied here.

III. Balance of Equities

The Court also finds that the balance of equities tips in Plaintiffs' favor. As noted above, Booth and the Plaintiff class will likely suffer serious irreparable harm if the requested relief is denied. On its side of the equities scale, Defendant argues that DHS has spent months putting the BPR model into place and ordering it to implement another scheme or imposing other requirements on it will only derail its efforts. (Opp'n at 13–14.) However, the injunction sought by Plaintiffs does not require DHS to implement another scheme, nor does it impose additional requirements on it. It merely seeks to compel DHS to fulfill its existing obligations under the law. As the Ninth Circuit has observed:

> Because the defendants are required to comply with the Food Stamp Act under the terms of the Act, we do not see how enforcing compliance imposes any burden on them. The Act itself imposes the burden; this injunction merely seeks to prevent the defendants from shirking their responsibilities under it.

Withrow, 942 F.2d at 1388 (quoting Haskins, 794 F.2d at 1277). In other words, the requested relief would not impose on DHS any additional burden beyond that imposed by federal law. And to the extent that the injunction may cause DHS to incur additional expenses or experience administrative difficulties, the Court concludes that those concerns are clearly outweighed by the public interest in providing immediate assistance to low-income households who are eligible for relief but have not received needed assistance. See Golden Gate Restaurant Ass'n v. City and County of San Francisco, 512 F.3d 1112, 1126 (9th Cir. 2008) ("'Faced with [] a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly' in favor of the latter.") (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)); see also Blanco v. Anderson, 39 F.3d 969, 973 (9th Cir. 1994) (finding that lack of resources is no excuse for failing to provide the plaintiffs their statutory entitlements under the Food Stamp Act).

IV.   Public Interest

"The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief." California Pharmacists Ass'n v. Maxwell-Jolly, 596 F.3d 1098, 1114–15 (9th Cir. 2010) (internal quotation marks and citation omitted).

Here, the Court concludes that public interest considerations clearly weigh in favor of granting the requested relief. As an initial matter, it is axiomatic that the public has an interest in the enforcement of federal laws. See Small v. Avanti Health Systems, LLC, ---F.3d---, 2011 WL 5120538 at *12 (9th Cir. Oct. 31, 2011) ("the public interest favors applying federal law correctly"); N.D. v. Haw. Dep't. of Edu., 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest."). Moreover, as discussed above, ordering Defendant to comply with federally mandated timeliness requirements would serve to advance social welfare by ensuring that eligible low-income households receive needed assistance to provide food for themselves and their families. In fact, Congress enacted the food stamp program "to promote the general welfare [and] safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C.

§ 2011. Congress also found that "increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of the Nation's agricultural abundance and will strengthen the Nation's agricultural economy, as well as result in more orderly marketing and distribution of foods." Id. Thus, the express statutory language makes clear that the food stamp program was designed to serve and promote the public interest. It therefore stands to reason that an injunction requiring compliance with the Act and its implementing regulations would serve those goals.

V. Preliminary Injunction

Based upon consideration of all the Winter factors set forth above, the Court concludes that Plaintiffs have made a clear showing that they are entitled to preliminary injunctive relief requiring DHS to process food stamp applications and issue benefits to eligible households within federally mandated time frames. The Court hereby directs the parties to meet with Magistrate Judge Richard Puglisi within one week from the date of this Order for the purpose of addressing the scope and terms of the preliminary injunction to be issued by this Court. Thereafter, the parties shall submit to the Court a proposed form of injunction within thirty (30) days from the date of this Order. If the parties determine that

they need more time after meeting with Judge Puglisi, they may request an extension with this Court. If the parties are unable to settle on a mutually agreeable form of injunction, the Court will impose an appropriate and reasonable injunction.

VI. Waiver of Bond Requirement

Lastly, Federal Rule of Civil Procedure 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Ninth Circuit has recognized that Rule 65(c) "'invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)) (emphasis in original). For example, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Id.

In the present case, there is no realistic likelihood that Defendant will be harmed by an order requiring compliance with federal laws that DHS is already obligated to follow. Further, Plaintiffs are individuals of limited financial means

and there is a significant public interest underlying this action. In light of these circumstances, the Court exercises its discretion to waive the bond requirement under Rule 65(c). See Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1126 (9th Cir.2005) (recognizing that no bond or a nominal bond may be appropriate in cases involving the public interest); see also Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (upholding nominal bond where the cost to the government would be minimal, and the class advancing the public interest had unremarkable financial means).

CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction. (Doc. # 30.) The parties are hereby directed to meet with Magistrate Judge Richard Puglisi and submit to the Court a proposed form of injunction no later than thirty (30) days from the date of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 16, 2011.

David Alan Ezra
United States District Judge

Booth, et al. v. Patricia McManaman, CV No. 10-00680 DAE-RLP; ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION